# Exhibit 7

STATE OF NORTH CAROLINA
COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE DISTRICT COURT DIVISION
21 CV- 005118

FILED
2021 JUN -4 P 3:43
WAKE CO., C.S.C.
BY ___

DINEEN ETIENNE, DBA DEE'S CONSTRUCTION
Plaintiff )
V )
) AMENDED COMPLAINT
)
CBS BROADCASTING INC, NEXSTAR )
STEVEN SBRACCIA, )
Defendants, )

## COMPLAINT

NOW COMES the Plaintiff, Dineen Etienne by and through pro se, file this complaint against the Defendants CBS Broadcasting Inc, Steven Sbraccia, for collusion of slander, defamation of character, libel, Discrimination, and tortuous interference.

## PARTIES

1) Dineen Etienne (DBA Dee's Construction) is the Plaintiff's in this action. Hereinafter referred to as the" Plaintiff" or" Etienne", she is a resident of Cumberland County, North Carolina. Plaintiff Etienne operates is the registered agent and maintains resident and business at: 4210 Falmont Place Unit 207, Fayetteville North Carolina 28314 Dineen Etienne is owner of Dee's Construction a small minority owned business in construction for residential and commercial clients in North Carolina including in Wake County.

2) Defendants CBS Broadcasting Inc, Nexstar and Steve Sbraccia an affiliate news station of CBS news Channel17 news is the Defendants in this action. Hereinafter referred to as Defendants "CBS Broadcasting Inc" or Steve Sbraccia" a reporter of CBS Channel 17 news. CBS Broadcasting Inc. is registered agent and maintains its business station at: 1205 Front Street, Raleigh North Carolina 27609. Defendants CBS Broadcasting affiliate News station resides in Wake County, North Carolina and is the headquarters for CBS Broadcasting, located at 51 West 52nd Street New York, NY 10019 including in Wake County. Nexstar is affiliate of CBS Broadcasting located, 545 East John Carpenter Freeway, Irving TX 75062

investigate Department of Public Safety of Plaintiffs claim of the collusion and unfair trade deceptive practices.

11) Defendant Steve went a little bit further to diminish the character of Plaintiff Etienne by than talking to the Bryant and Amy Edwards that owned Plaintiff money for the completion of 90% their home.

12) Had Defendants CBS broadcasting, Nexstar, and Steve done a thorough investigation he would have seen a report of Amy Edwards hitting Plaintiff on the head and police report of Plaintiff calling the police to retrieve her tools. defendant also failed to look at the mediation portion of the settlement that states there is to be no social media, no contact regarding this matter.

**EXHIBIT A -Settlement agreement Amy and Bryant Edwards, and Dineen Etienne**

**EXHIBIT B- Magistrate charge Amy Edwards of assault**

**EXHIBIT C- Dispute resolution dated March 13, 2017**

## FIRST CUASE OF ACTION
## COLLUISON OF SLANDER

13) Defendants CBS Broadcasting, Nexstar, Steve colluded with the office of Historically Underutilized Businesses Tammie Hall and the North Carolina Department of Public Safety to slander Plaintiff name and business in order to cover up their wrong doing of contract interference, collusion with supplier, abuse of power, mismanagement of funds, and the discrimination of black woman and minorities.

14) On or around June 8, 2018 Defendants made malicious statements was communicated to at least millions through CBS Broadcasting, Nexstar and channel 17 news in the state of North Carolina.

15) The Defendants false and malicious statements, when considered alone and without innuendo, have (a) negatively impacted Plaintiff trustworthiness and character. (b) Caused Plaintiff to be subjected to distrust, ridicule, contempt, and disgrace and (c) injured Plaintiff reputation and goodwill in the Fayetteville North Carolina community located in North Carolina.

16) Defendants not only slander, defamed and discriminated against Plaintiff but with malice during and after the death of George Floyd Defendants continued to defame and discriminated against Plaintiff by

## JURISDICITION VENUE

3) Wake County Court has jurisdiction over this complaint between Plaintiff and Defendants pursuant to N.C. Gen Stat. 1-75.1, et Seq.

4) Venue is proper in Wake County, North Carolina to resolve this claim pursuant to N.C. Gen Stat. 1-82.

## ALLEGATIONS OF FACTS

5) On around March 6, 2017 Plaintiff secured a contract with the North Carolina Department of Public safety. Plaintiff experienced collusion, abuse of power, discrimination and contract interference of the North Carolina Department of Public safety employees and suppliers.

6) On or around the beginning of the year 2018 Defendant Steve Sbraccia came to plaintiff's resident located at 4210 Falmont place Unit 207, in Fayetteville North Carolina. To question plaintiff regarding a business relationship between an ex-boyfriend Anthony Buttermann.

7) Plaintiff told Defendant Steve that Anthony gave her $5000 to get supplies for the project and that he was not the only one that Plaintiff had gotten money from to help with the project, since banks and loan companies would not lend money to a woman because of the color of her skin.

8) Plaintiff, also advise defendant Steve that she was paid for some of the materials but had to buy materials over because suppliers were either holding up materials, price gouging, or would have the materials come in damaged. Due to the Department of Public safety and their good ol boy system Plaintiff suffered economic hardship. And was unable to pay back any money at this present time to Anthony.

9) Plaintiff in ex-boyfriend Anthony entered a business relationship in 2017 that would need to let the business growth before receiving any funds. And in any business relationship, a business would need to mature for at least 5 years. In this case, it had only been a year and a half.

10) Defendants CBS, and Steve went to question Department of Public safety regarding payment to Dee's construction. Department of Public safety stated that they have paid Plaintiff. But Defendants did not

posting George Floyds picture with the caption underneath "Fayetteville woman accused of posing ..."CBS 17.com", along with other pictures of plaintiff.

17) Therefore, in the wake of systemic racism, and exclusion, of people of color. Defendants continues to marginalized African Americans even within CBS and has engaged in the same behavior with the plaintiff has she is the owner of her owned business (Dee's Handywomen Service, LLC).

18) Plaintiff was so distraught after seeing the post of George Floyds, Plaintiff contacted all broad members listed on CBS website on December 21, 2020, that CBS news channel 17 continues to retaliate against minority contractor after she files numerous of complaints against North Carolina for racial equality, abuse of power, discrimination and retaliation.

**SECOND CAUSE OF ACTION**
**DEFAMATION OF CHARACTER**

19) Defendants CBS Broadcasting, Nexstar, and Channel 17news Steve publication of Channel 17 news containing false, injurious, and defamatory slander statements about the plaintiff business practices and performances. After Plaintiff made it her business though out the years to have customer satisfaction.

20) On or around June 8, 2018 Defendant malicious statements that was communicated to at least millions through, channel 17 news in the state of North Carolina and place on googles search engines for billions that Plaintiff Dineen Etienne is a poised contractor. Plaintiff business suffered significant financial loss and client's demeanor changed against Plaintiff after see this news reporting.

21) The Defendants false and malicious statements, when considered alone and without innuendo, have (a) negatively impacted Plaintiff trustworthiness and character. (b) Caused Plaintiff to be subjected to distrust, ridicule, contempt, and disgrace and (c) injured Plaintiff reputation and goodwill in the Fayetteville North Carolina community located in North Carolina and around the world,

22) As a result of the Defendant's actions, the plaintiff has suffered damages for which the defendant should compensate plaintiff.

23) Defendants Steve knowingly had information of unfair deceptive trade practices, discrimination

against black woman and minorities.

24) Pursuant to N.C.P.I. Civil 806.50 of defamation, Libel actionable.

**THIRD CAUSE OF ACTION**
**LIBEL**

25) Defendants, and its investigative reporter Steve Sbraccis reporter for Channel 17 news, falsified information without doing a complete investigation. And intentionally distort the news in order to cover-up North Carolina's wrong doing in this investigation. Defendant's words and images that are degrading too the Plaintiff and caused injury to her business, including Plaintiff reputation.

26) Defendants have conspired with North Carolina Department of Public Safety and its employees, North Carolina Department of Transportation and Administrative office of its exploitation of women, minorities doing business with in North Carolina.

27) Plaintiff has performed all condition precedent to the bringing of this action.

**THIRD CAUSE OF ACTION**
**TORTUOUS INTERFENCE**

28) Defendants knowing had information of Plaintiff complaints against the state of North Carolina discrimination and unfair deceptive trade practices and Defendants engage in the collusion of inference of a contract.

**FACTS OF COMPLANT**

29) Defendants were welcomed into my home at 4210 Falmont Place Unit 207, Fayetteville NC 29314, on March 22, 2018 at or around 11:30am.

30) Defendants than were giving complete documentations of what has transpired on a project that I secured with North Carolina Department of Public Safety, with the collusion and racketeering practices that took place on this project.

31) And its North Carolina Dept. of Administration's Office recklessly abused and exploitation of women, minorities, disabled veterans, disadvantaged and disabled business owners.

32) The abuses of State programs and offices; politicizing federal and state funds designated to help small, minority, disadvantaged and disabled business owners by awarding contracts to friends who provided little support to African American businesses. The purpose, it seems, is to corral the minority and women voters for election.

33) Plaintiff made Defendants aware of the powerful to investigate practices of collusion that needs investigating within the State of North Carolina.

34) Defendants, were made aware by the Plaintiff of the many barriers of minority to secure bank loans, or even funding through the small business administration. But, instead has to secure money from friend and family members.

35) Plaintiff made Defendants aware of records indicate the bundling and misuse of public funds have occurred for more than ten years.

36) With North Carolina Department of Public Safety communicating with my suppliers, which is against the law! (Pursuant to 133-24. Government contracts; violation of G.S. 75-1 and 75-2) That had placed Plaintiff in a position, where Plaintiff over paying for supplies, double paying for supplies. Along with the behavior of suppliers either delivery the products damaged and refuse to make it right!

37) Defendants, first report that your report he did with Anthony. Anthony indicated in your report that he never steps foot inside Bank of America, had your reporter had actual documentation, it will show that Anthony and Plaintiff got the documents notarized by a Bank of America and a Bank of America employee. And took the funds in the amount of $5000 and put it into my account. Cameras don't lie!

38) Defendants second report that with the Edwards! Also, was false and this couple continue to lie and to tarnish Reputation of Plaintiff and her business.

39) Plaintiff is suing the Edwards for breach of contract, defamation of character and slander. The Edwards, clearly violated a contract that was signed July 14, 2017. Mrs. Edwards also indicated that the charges were dropped against her! That is not true, as you will see from the documentation that Plaintiff have provided. Edward entered in a business contract with Dee's Handywoman Service on Oct 09, 2016 contract

amount Labor amount is $19,273.95 and supplies in the amount of $29,635.58 Dees Construction did not profit off of supplies. There was also a second contract in the amount of $16,181.91 from Hurricane Matthews that flooded the work that Dee's Handywomen Service completed and had to redo.

**EXHIBIT D -Contracts**

**EXHIBIT E -Edwards Check for first contract for supplies $29,636.58**

**EXHIBIT F- Edwards Check for Home renovation to Dee's Handywoman Service LLC $9,000.00**

40) Had Defendants done of investigating! Steve would have seen that Plaintiff is the one that dialed 911. When the police came to their home. Plaintiff was able to get my supplies out of their home.

41) The officers that came out, advise me to go down to the magistrate to file a report. Which Plaintiff did!

42) Secondly, the Edwards indicated that Plaintiff did substandard work and my work was terrible! If that was the case, why did they let me go from room to room to complete 95% of the project! When Plaintiff got down to the last room Mrs. Edwards assaulted me! In order not to pay, which is a classic case of home owners/general contractor not wanting to pay their sub-constructors. And as you will see from the documentations Plaintiff has provided the Edwards planned not to pay Plaintiff all money from the beginning.

43) Also, you will see from the documentation that Plaintiff has provided with the payments. Mrs. Edwards did not go with me to get the supplies when I initially started the project. All material were delivered by Lowes. In fact, Mrs. Edwards wrote Plaintiff a check for the supply in the amount of 29,636.58 to purchase all the materials. (Look at the bottom left hand of the check and just has Amy Edwards.

44) As you will see after Plaintiff purchased the materials the Edwards begin paying Plaintiff for the renovations to their home and as you will see at the bottom of each check it's indicate renovations for the home. So they did not pay me in full and there was a lien placed on their home.

45) Defendants, filed to go state filing of Plaintiff registrations with the State of North Carolina and the office of Historical Underutilized Business to see since 2013. Plaintiff is registered has a small business

and cannot do work over 29,999.99 unless sub-contractor is doing work under a General Contractor can do work over 29,999.99. Which clearly indicates that Plaintiff is a Sub-contractor.

46) Plaintiff also advised the Edwards of this laws.

47) Defendants through channel 17 news have made statements about Plaintiff, which are false impression with true statement. Which cause Plaintiff harm of her livelihood

48) Defendants through channel 17 news to published, and/or communicated to third parties these falsehoods.

49) Defendants knew such false statements would likely result in material and substantial defamation of Plaintiff and her business practices.

50) Defendants, false statements impute to other conduct, characteristics and/or conditions incompatible with the proper exercise of Plaintiff lawful business, trade and/ or professionalism.

51) Defendants, fail to read the settlement agreement between both pay the state Paragraph (10) of the agreement, which state enforcement- notwithstanding the forgoing release, the parties acknowledge and agree that and all claims relating to or arising out of any breach of the obligations owned under this Agreement are expressly reserved. In the event of a breach of this agreement, the injured party by law or equity, including the right to the specific performance and damages for breach of this agreement. If it becomes necessary for either party to seek enforcement of this agreement through civil action, the prevailing party in such action shall be entitled to an award of it cost and actual attorney's fees from the non-prevailing party.

52) Plaintiff was unable to defend herself in news report because of settlements agreement between Edwards.

53) Defendants maliciously went after Plaintiff after complaint was filed at NCDOT, HUB office and NCDPS for abuse of power and mismanagement of Federal Funds.

**EXHIBIT G – Mismanagement of Federal Funds**

**EXHIBIT H – Complaint to the Office of Civil Rights**

**EXHIBIT I – List of Minority firm complaints**

54) Defendants causing other to see that Plaintiff is incompetent in her profession.

55) Plaintiff was ostracized and made fun of by calling Plaintiff a poisoned contractor. Dee's Handywomen service LLC.

56) Defendant, action of CBS, Nexstar has caused the Plaintiff to be shunned or avoided (such as to be fired or not hired for a job).

**Standard of Review**

57) Defendants have the rights to freedom of speech. Federal Communication Commission prohibits by law from engaging in censorship or infringing on First Amendment rights of the press. However, its illegal for broadcasters to intentionally distort the news and the FCC may act on complaints if there is documented evidence of such behavior from person with direct personal knowledge. FCC (citation omitted)

A. Most journalistic codes of ethics are based on the premise that the news media exists to provide citizens with the information they need to function in a free and democratic society. Journalists should conform to several ethical obligations:

- Present news stories that inform and serve the needs of citizens.
- Present issues fairly.
- Present stories in a way that addresses their complexity.
- Present diverse perspectives.
- Monitor government and corporations

B. Responsible journalism

- ensures accuracy (even if it means causing delays);
- reports the truth;
- stays loyal to citizens by putting the public interest above all else;
- is protective and sensitive to those involved in the news;

- remains objective and presents information in a neutral way; and
- allows for commentary and opposition.

C) All news stories contain some bias because of the diversity of journalists' perspectives. While the news media is often criticized for representing a political bias in reporting, ethical journalists always strive to present issues in a fair and comprehensive way. 14.3 New media and Ethical issues in mass media

D) The Code of ethics that the news media exists to provide citizens with information they need to present news stories that inform and serve the needs of citizen. (citation omitted)

58) Defendants, action are hurtful to the Plaintiff and as caused the plaintiff mental stress and economical loss.

**PRAYER FOR RELIEF**

Wherefore, the Plaintiff Dineen Etienne Demands judgment against the Defendants' CBS Broadcasting and Steve Sbraccis for damages and other relief that this court deems just and proper.

1) To find Defendants liable for collusion of slander, defamation of character, libel, Discrimination, and tortuous interference

2) In the alternative, to order that Defendants removal of all reports of slander from there website and Google.

3) Plaintiff request that the court order Defendants make a public apology to Plaintiff.

4) To tax the cost of this action against the Defendants; and.

5) That Plaintiff be awarded punitive and monetary damages in the amount of 20 million dollars or as the court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiff, Dineen Etienne request a jury trial.

**CERTIFICATE OF SERVICE**

<u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing document of amended complaint,was this day served upon Defendants' Attorney by placing the same in the United State Fedex mail, postage paid, and addressed as follow:

Lauren P. Russell (N.C. Bar No54372
BALLARD SPAHR LLP
1909 k Street NW, 12th Floor
Washington, DC 20006
russell@ballardspahr.com
202.661.7605 Direct
202.661.2299 Fax
910.264.2625 Mobile

Leita Walker
BALLARD SPAHR LLP
2000 IDS Center, 80 South Street
Minneapolis, MN 55401-2119
Walker1@ballardspahr.com
612.371.6222 Direct
612.371.3207 Fax

This the 04 day of June 2021.

/s/ Dineen Cherylann Etienne, Pro Se.
4210 Falmont Place
Fayetteville, NC 28314
Deesconstruction0706@yahoo.com4210
919-338-4454

# EXHIBIT A- Settlement agreement between Amy and Bryant Edwards, and Dineen Etienne

NORTH CAROLINA

CUMBERLAND COUNTY

SETTLEMENT AGREEMENT, COVENANT NOT TO SUE AND RELEASE

This SETTLEMENT AGREEMENT, COVENANT NOT TO SUE AND RELEASE (the "Agreement") is entered into and made effective this 19th day of July, 2017, by and between BRYANT EDWARDS and wife AMY EDWARDS (the "Edwardses"); and DEES HANDYWOMAN SERVICE, LLC (the "DHS"), (collectively, the "Parties").

WITNESSETH:

WHEREAS, on or about October 27, 2016, DHS and the Edwardses entered into an agreement to perform construction renovation work at the Edwardses' house (the "Contract") located at and commonly known as 1864 Bryn Mawr Drive, Fayetteville, North Carolina 28304 (the "Property");

WHEREAS, subsequently the parties had substantial disputes about whether DHS needed to have a general contractor's license, have proper permits to perform certain work at the Property and the scope and quality of DHS' work ("Disputes");

WHEREAS, on January 19, 2017, File No. 170 1093 the Edwardses filed a Complaint with the North Carolina Department of Justice Consumer Protection Division ("NCDOJ Complaint") against DHS;

WHEREAS, on March 7, 2017, DHS filed a lien on the Property;

WHEREAS, on May 2, 2017, DHS cancelled the March 7, 2017 lien and filed a new lien (17 M 271)

WHEREAS, the parties have engaged in extensive settlement negotiations to resolve the Disputes;

WHEREAS, the DHS has threatened litigation and the Edwardses have threatened to file counter suit to any litigation, but no action has been filed as of the date hereof and each Party is represented by legal counsel;

WHEREAS, the time to file litigation to enforce the lien filed on May 2, 2017 by DHS (17 M 271) ran on July 5, 2017;

WHEREAS, the Parties now desire to settle and resolve all differences, disagreements and disputes that may exist between them, of any kind or nature, pursuant to the terms set forth herein.

Exhibit
A

6. **No Admission of Liability**. It is understood and agreed that this Agreement is a compromise of disputed claims and/or obligations, and that the consideration given is not to be construed as an admission of liability on the part of any Party and that the Parties hereto deny liability to each other and solely intend to avoid litigation and further uncertainty and expense, and intend merely to buy their peace. Each Party executing this Agreement further acknowledges and agrees that neither the execution of this Agreement, nor anything contained herein, is intended to be, or shall be construed or deemed to be, for any purpose whatsoever, an admission by any Party to any third person, whether or not a party hereto, of any liability of any kind or nature whatsoever. Each Party executing this Agreement generally and specifically denies, disclaims, disavows, and rejects any such liability of any kind or nature whatsoever to any third person.

7. **Integration and Merger**. No promise or Agreement other than those recited herein has been made as consideration for the promises contained in this Agreement. The Agreement constitutes the entire Agreement between the Parties. All prior understandings, representations and Agreements are merged into this Agreement. This Agreement shall not be modified in any manner except by written Agreement signed by the Parties.

8. **Voluntary Execution**. The Parties attest that this Agreement is voluntarily made after ample opportunity to review the Agreement with any individuals, advisors and counsel so desired. Each Party is represented by their own attorney and has consulted that attorney prior to entering into this Agreement. Should any provision of this Agreement require interpretation or construction, the Parties hereto agree that the court, administrative body, or other entity interpreting or construing this Agreement shall not apply a presumption that the provisions herein shall be more strictly construed against one party by reason of the rule of construction that the provisions of a document shall be more strictly construed against the party who itself or through its representatives prepared the document, it being agreed that the Parties and their respective attorneys have fully participated in the preparation of all provisions of this Agreement.

9. **Costs and Attorneys' Fees**. The Parties shall bear their own costs and attorneys' fees incurred in connection with this matter.

10. **Enforcement**. Notwithstanding the foregoing releases, the Parties acknowledge and agree that any and all claims relating to or arising out of any breach of obligations owed under this Agreement are expressly reserved. In the event of a breach of this Agreement, the injured party shall have the right to institute an independent action to pursue any and all rights provided by law or equity, including the right to the specific performance and damages for breach of this Agreement. If it becomes necessary for either Party to seek enforcement of this Agreement through civil action, the prevailing party in such action shall be entitled to an award of its costs and actual attorney's fees from the non-prevailing party.

11. **Governing Law**. This Agreement shall be governed and interpreted under the laws of the State of North Carolina.

12. **Severability**. If any paragraph or any part of any paragraph, of this Agreement is held by a court of competent jurisdiction to be void or unenforceable, such paragraph or such part of any paragraph shall be stricken and all remaining portions of the Agreement shall continue in effect and not be affected by such finding.

13. **Non-Assignment of Claims.** The Parties covenant and agree that they have not and will not assign to any other person or entity any Claims and/ or Obligations released and waived in this Agreement. The Parties further agree that any such assignment or attempted assignment shall be void.

14. **Forum.** The parties agree that any and all claims arising from or out of this Agreement shall be brought,. if at all, in the General Court of Justice, Superior Court Division, Cumberland County, North Carolina. The Parties expressly consent to the personal jurisdiction and venue of said court.

15. **Execution in Counterparts.** This Agreement may be executed and delivered in multiple counterparts, and all counterparts so delivered and executed shall constitute one and the same instrument and be enforceable as such.

IN WITNESS WHEREOF, the Parties have executed this Agreement and Release as of the day and year first above written.

Amy Edwards

Bryant Edwards

Dees Handywoman Service, LLC

By:

Dineen Etienne, President

# EXHIBIT B- Magistrate charge Amy Edwards of assault

CUM RLAND COUNTY DISPUTE RESOLUTION CENTER
321 Dick Street, Ste. 104 Fayetteville, NC 28301
(910) 486-9465 Fax: (910) 486-8369 email: ccdrc@embarqmail.com

## MEMORANDUM OF UNDERSTANDING

The matter of Amy Edwards and Dineen Etienne was heard this 13th day of March, 2017 before Sherri Pierce, Milton Evans and Roselin Rodriguez mediators)

**The individuals whose signatures appear below agree that they have freely and willingly resolved their problem through mediation. They understand that this agreement is legally binding, and is a morally binding agreement arrived at in good faith through open discussion.**

**All parties have agreed to the following:**

**Both parties have discussed the situation an agree that there will no longer be any issues.**

- **No phone calls, no emails or social media**
- **No personal contact**

**Upon completion of this agreement, Dineen Etienne agrees to drop the charge 17CR050598 against Amy Edwards.**

**If the agreement is not completed or if there is a problem, then both parties are responsible to call the center (910-486-9465) to let us know BEFORE the next court date of May 01, 2017.**

**The parties also state that they have worked towards a fair and just agreement which they intend to fulfill.**

**The parties have already paid the $60.00 fee at the court house.**

*Signed this 13th day of March 2017.*

[signature] Complainant

Amy Edwards
Defendant

**CCDRC Case Number: 17-03-045**

Exhibit
C

# EXHIBIT C- Dispute resolution dated March 13, 2017

# COURT WITNESS INFORMATION

MAGISTRATE: **J. ANDERSON**

DATE ISSUED: 1/16/2017 TIME ISSUED: 7:04 PM

STATE OF NORTH CAROLINA VS **AMY EDWARDS**

DISTRICT COURT: **2C** 9:00 AM MONTH: **03** DAY: **13** YEAR: **2017**

CHARGE(S): **ASSAULT**

This information is provided to you as a witness in the above case(s). District Court starts a 9:00 a.m. each day.

The docket or list of all cases is called first thing each morning. As each defendant's name is called, they must answer. All defendants who do not answer will be considered called and failed. An **Order for Arrest** will be issued and served upon them. A new court date will be set and a subpoena will be issued for you to appear in court on the new court date. You are asked to remain in the courtroom until the second calling of the docket.

If an emergency arises and you find you cannot appear as a witness on the date scheduled, you are requested to contact the District Attorney's Office at 910-475-3010, and ask to speak to the Victim/Witness Assistant. At any time you are making inquires concerning a case, you will need to give the defendant's name and charge(s), and some of the defendants will have more than one charge pending at a time.

**NOTICE NOTICE NOTICE**

***Charges may not be dropped without the permission of the District Attorney and/or consent of the Presiding Judge, and only on the scheduled court date.***

**NOTICE NOTICE NOTICE**

To insure that the process has been served prior to coming to court, call the following numbers:

If the person lives in the county or outside of the county call: (910) 677-5439
If the person lives within the city limits of Fayetteville call: (910) 433-1529 or (910) 433-1830

These offices are only opened from Monday thru Friday 8:30 a.m. until 5:00 p.m.

# EXHIBIT D -Contracts

# QUOTE

Date: 10/08/2016
Invoice # [1679]
Expiration Date: 10/12/2016

Dee's Handywoman Service
LLC
4009 Southern Oaks Drive
Fayetteville NC 28314
910-495-6955
Dineen0706@gmail.com

Mr.& Mrs. Bryant Edwards
1846 Bryn Edwards
Fayetteville NC 28304
615-419-7144
Customer ID 1641

| Sub Contractor | Job | Tax ID | Payment Terms 65% | Date | Payment Terms 35% | Date |
|---|---|---|---|---|---|---|
| Dineen Etienne | Edwards | 46-4456789 | $30,293.58 | Time of service | $10,301.19 | When job is complete |
| | | | 29,636.58 | | 10958.79 | |

| Qty | Item | Description | Sq Ft | Discount | Line Total |
|---|---|---|---|---|---|
| kitchen- Flooring | Remove flooring | Flooring, backsplash, shelfing | 240 | | $3,570.00 |
| Build Office desk | Remove / replace | Desk flooring, paint | 300 | | $3,659.00 |
| 1 Total bathroom remodel | Remove bathroom | Total bath room remodeling | 250 | | $3,755.55 |
| 1 bath tub child BR/ bedroom | Remove Tub Flooring | Bath/Tile/Flooring | 288 BR | 110 Bath room | $3,150.00 |
| 1 Down stairs bathroom shower | Remove shower | Shower remodel/tile Flooring | 340 | | $3,775.10 |
| Stair/ Down room and Closet | Remove Carpet | Stain, flooring | 657 | | $2,389.20 |
| Master BR Closet | Remove wall guest BR | New walk in closet | 204 | | $1,450.15 |
| Laundry Room | Remove wall/ ceiling | | 120 | | $782.51 |
| Painting/ trim/ molding/ walls/ Drywall/ OBS | Material | | | | $990.18 |
| Material hauling | All Material | Rental of dumper | | | 540.00 |
| Plumbing/electrical | All Bathrooms | | | | 1,365.10 |
| Labor | 5 employees | | | | $19,273.95 |

| | | |
|---|---|---|
| ***Total Discount*** | Subtotal | $44,700.74 |
| | ***Tax*** | $3,129.05 |
| | Military 5 % | (2,235.04) |
| | ***Total*** | $45,594.74 |

Quotation prepared by: [signature] 10/9/2016

This is a quotation on the goods named, subject to the conditions noted below: (Describe any conditions pertaining to these prices and any additional terms of the agreement. You may want to include contingencies that will affect the quotation.) client shall pay 65% down and remaining 65% the day job is completed. If client does not pay remaining 35%, there will be a lien place on your home and taxes will be garnished. There will be nothing added or taken away from this contact. Contact amount will stand as is $45,594.74

To accept this quotation, sign here and return: [signature] Amy Edwards 9 Oct 2016

29,638.58
#0003789818
657.00

Dee's Construction LLC
Sub-Contractor

***Thank you for your business!***

DEFENDANT'S EXHIBIT 1

# QUOTE

Date: 10/08/2016
Invoice # [1680]
Expiration Date: 10/13/2016

Dee's Handywoman Service LLC
4009 Southern Oaks Drive
Fayetteville NC 28314
910-495-6955
Dineen0706@gmail.com

Mr.& Mrs. Bryant Edwards
1846 Bryn Edwards
Fayetteville NC 28304
615-419-7144
Customer ID 1641

| Sub-Contractor | Job | Tax ID | Payment Terms 65% | Date | Payment Terms 35% | Date |
|---|---|---|---|---|---|---|
| Dineen Etienne | Water damaged | 46-4456789 | $10,518.45 | Time of service | $5,663.47 | When job is complete |

| Qty | Item | Description | Sq. Ft | | Line Total |
|---|---|---|---|---|---|
| Found 3 inch of water in down stairs | Water Extraction Damage Response Crawl Space Cleanup | Do to water damage needed to remove following items | 656sq. ft | 260 pint capacity | |
| Removal Odors | Crawl space | Odors, Sub pump install | | | |
| Drying of Structure and Contents | Carpet/ Padding/ Flooring/ Drywall | After fans and dehumidifying need to remove carpet, padding Flooring, Drywall, base broads quarter- round | | | |
| Down room and Closets bathrooms | Water damage in drywall . | Need to remove tile and replace drywall | | $1200 X 4 | $4800.00 |
| **Material Cost** | **Unit Cost** | | **Material Cost** | **Unit Cost** | |
| Trim | 4.68 X 25 | $117.00 | Molding | $14.40 X 20 | $ 288.00 |
| Mud | 14.98 X 4 | $ 44.98 | Paint | 47.98 X 6 | $ 287.88 |
| Flooring | 2.98 sq. ft. X 656 | $ 1954.88 | 2X4 | $2.98 X 15 | $ 44.70 |
| Drywall, | 10.98 X 35 | $ 384.30 | Material, roller, brush, Type | $197.25 | $ 169.25 |
| Grout | 29.98 X 5 | $ 149.90 | Adhesives | $35.48 X 7 | $ 248.36 |
| Material hauling | Rental of dumper | $ 675.00 | Storage Unit rental | $275.00 | $ 275.00 |
| Labor | 3 employees | Per employee hourly | $13.50 | 30 days= 160 hrs | $6,480.00 |
| | | | ***Total Discount*** | Subtotal | $15,919.25 |
| | | | | ***Tax*** | $1,114.35 |
| | | | | Military 5 % | ($851.68) |
| | | | | ***Total*** | $16,181.91 |

Quotation prepared by: ______________________________

**This is a quotation on the goods named, subject to the conditions noted below: (Describe any conditions pertaining to these prices and any additional terms of the agreement. You may want to include contingencies that will affect the quotation.) client shall pay 65% down and remaining 65% the day job is completed. If client does not pay remaining 35%, there will be a lien place on your home and taxes will be garnished. There will be nothing added or taken away from this contact. Contact amount will stand as is $16,181.91**

To accept this quotation, sign here and return: ______________________________

# EXHIBIT E -Edwards Check for first contract for supplies $29,636.58

0003789118

**Teller Check**
**- - Receipt - -**

USAA®

USAA Federal Savings Bank
10750 McDermott Fwy
San Antonio, TX 78288-0544

Bank Account: 0110413172
Preparer: PL93655

Date: 10/11/2016
Item Amt: $**29,636.58
Fee: 5.00

Payee: DEE'S HANDY WOMAN SERVICE LLC

NOTE: An indemnity agreement/bond may be required prior to refund or replacement of a teller check in the event that it is lost, misplaced, or stolen. There is a 90 day waiting period before the refund or replacement can be issued.

RE: AMY J EDWARDS
Memo: NA

PURCHASER'S COPY
NON_NEGOTIABLE

91716-1200

# EXHIBIT F- Edwards Check for Home renovation to Dee's Handywoman Service LLC $9,000.00

RE: AMY J EDWARDS
Memo: NA
91716-1200

PURCHASER'S COPY
NON_NEGOTIABLE

Teller Check
- - Receipt - -

0003837178

USAA®

USAA Federal Savings Bank
10750 McDermott Fwy
San Antonio, TX 78288-0544

Bank Account: 0110413172
Preparer: PLL5659

Date: 12/02/2016
Item Amt: $**2,500.00
Fee: 5.00

Payee: DEE'S HANDY WOMAN SERVICE , LLC

NOTE: An indemnity agreement/bond may be required prior to refund or replacement of a teller check in the event that it is lost, misplaced, or stolen. There is a 90 day waiting period before the refund or replacement can be issued.

RE: BRYANT S EDWARDS
Memo: HOME RENOVATION
91716-1200

PURCHASER'S COPY
NON_NEGOTIABLE

Teller Check
- - Receipt - -

0003851384

USAA®

USAA Federal Savings Bank
10750 McDermott Fwy
San Antonio, TX 78288-0544

Bank Account: 0110413172
Preparer: PL92957

Date: 12/20/2016
Item Amt: $**2,500.00
Fee: 5.00

Payee: DEE'S HANDY WOMAN SERVICE, LLC

NOTE: An indemnity agreement/bond may be required prior to refund or replacement of a teller check in the event that it is lost, misplaced, or stolen. There is a 90 day waiting period before the refund or replacement can be issued.

RE: BRYANT S EDWARDS
Memo: HOME RENOVATION
91716-1200

DEFENDANT'S EXHIBIT 2
tabbies

PURCHASER'S COPY
NON_NEGOTIABLE

Teller Check
-- Receipt --

0003864817

USAA®

USAA Federal Savings Bank
10750 McDermott Fwy
San Antonio, TX 78288-0544

| | | | |
|---|---|---|---|
| Bank Account: | 0110413172 | Date: | 01/05/2017 |
| Preparer: | PLL5644 | Item Amt: | $**4,000.00 |
| | | Fee: | 5.00 |

Payee: DEE'S HANDY WOMAN SERVICE, LLC

NOTE: An indemnity agreement/bond may be required prior to refund or replacement of a teller check in the event that it is lost, misplaced, or stolen. There is a 90 day waiting period before the refund or replacement can be issued.

RE: BRYANT S EDWARDS
Memo: HOME RENOVATION
91716-1209

PURCHASER'S COPY
NON_NEGOTIABLE

# EXHIBIT G – Mismanagement of Federal Funds

RALEIGH, N.C. (AP) — The North Carolina Department of Transportation spent $740 million beyond what it planned to last year, state auditors said Tuesday as they urged stronger oversight of how DOT and its regional offices handle finances.

The performance review by State Auditor Beth Wood's office found DOT had spent $6.68 billion on road construction and repairs and other transportation projects for the year ending June 30, 2019. The agency had budgeted $5.94 billion, 12.5% less..

The discrepancy happened because DOT cost estimates were based on past spending levels, not on the specific projects and operations for the year, according to the audit. The DOT Chief Engineer's Office also failed to monitor the actual spending of each of the department's 14 regional offices, auditors said.

ADVERTISEMENT

"There was no formal documented process for communicating goals, objectives and responsibilities for complying with the spending plan," the audit read.

The findings, which stemmed from an audit that the General Assembly last year directed Wood to perform, reflect the recent fiscal troubles for DOT, which is within Gov. Roy Cooper's administration.

It was already known that the agency had been spending lots on roads and other expenses over the past few years.

The Republican-controlled legislature had wanted DOT to spend down otherwise large cash balances on projects. The agency also has had to make payments to landowners where future urban loops were planned after a state Supreme Court ruling on eminent domain, and fix massive hurricane road damage. While DOT forecast spending $50 million annually on disaster repairs, the actual spending reached $296 million during the last fiscal year, during which Hurricane Florence hit, according to DOT data.

The General Assembly agreed last fall to a bailout package to help DOT, which included the audit mandate. But COVID-19 brought much of the state's commerce to a halt, leading to dwindling gasoline and vehicle sales taxes, forcing DOT to lay off temporary employees, prepare furloughs for permanent workers and suspend most programs.

On Monday, DOT announced it could no longer award new projects because the agency's cash balance had fallen below the $293 million floor established by the legislature.

DOT, in a written response attached to the audit, said it agreed with the findings and is carrying out the recommendations. They include having the Chief Engineer's Office conduct more routine monitoring of division spending and force spending reductions or contract delays when overspending occurs.

ADVERTISEMENT

But DOT also said some of the money it had to spend on storm damage was never even appropriated. And it said that thousands of operations and maintenance projects have added to the difficulty of accurately predicting spending levels.

"The auditor's recommendations have been or are currently being incorporated into NCDOT with the exception of increasing the budget for disasters" within the agency's general maintenance reserve, the DOT response read. The legislature needs to increase reserve funds, or disaster spending will have "severe impacts" on other state Highway Fund programs, DOT wrote.

Wood's auditors also suggested greater oversight of the department's fund by the General Assembly, saying DOT manages billions of dollars without a comprehensive spending plan approved by the legislature. Lawmakers also could require more oversight of a method to finance road projects with federal funds, the audit said.

# EXHIBIT G – Mismanagement of Federal Funds

# EXHIBIT H – Complaint to the Office of Civil Rights

**U.S. Department of Justice**

Civil Rights Division

*Federal Coordination and Compliance Section-NWB*
*950 Pennsylvania Avenue, NW*
*Washington, DC 20530*

Doc #653975

MAY 0 6 2019

Ms. Dineen Etienne
4210 Falmont Place Unit 207
Fayetteville, NC 28314

Dear Ms. Etienne:

Your letter was received by the Federal Coordination and Compliance Section of the Civil Rights Division of the U.S. Department of Justice. We have considered carefully the information you have provided, but the matter does not appear to be within the jurisdiction of our office.

However, by the enclosed letter, we have referred the matter to the agency that is most likely to assist you. If you have any questions, please contact the U.S. Department of Transportation at (202) 366-4648.

Sincerely,

for Tamara Kessler
Chief
Federal Coordination and Compliance Section
Civil Rights Division

Enclosure

**U.S. Department of Justice**

Civil Rights Division

*Federal Coordination and Compliance Section-NWB*
*950 Pennsylvania Avenue, NW*
*Washington, DC 20530*

Doc #653975

MAY 06 2019

Mr. Charles E. James, Sr.
Director
Departmental Office of Civil Rights
U.S. Department of Transportation
1200 New Jersey Avenue, SE
Room W78-338, Mail Stop S-30
Washington, D.C. 20590

Dear Mr. James:

Enclosed for your review is a letter received by the Federal Coordination and Compliance Section of the Civil Rights Division of the U.S. Department of Justice. The matter does not appear to be within the jurisdiction of our office.

However, the issues raised may fall within the jurisdiction of your agency and, therefore, we are referring it to you for appropriate disposition. The writer has been notified of the referral.

Thank you for your assistance in this matter.

Sincerely,

for Tamara Kessler
Chief
Federal Coordination and Compliance Section
Civil Rights Division

Enclosure

[redacted] Dee's Construction-5924 Cliffdale Road Suite 120, Fayetteville, NC 28314
(Phone) 919-996-0109-Email: deesconstrucion@mail.com

March 2, 2018

**Department of Transportation**
Departmental Office of Civil Rights
1200 New Jersey Ave, S.E.
Washington, DC 20590
United States

**Re: Mismanagement of public funds and abuse of power**

Dear, Director Charles E James, Sr.

My name is Dineen Etienne, I am a certification DBE firm that has experience several issues with NCDOT. Each year the NCDOT receives funds to assist Minority Owned Business (MBE) and Women Owned Business (WBE) firms. Programs responsible for the DBE supportive services program is designed to evaluate and provided a structured process for DBE firms to receive training and guidance to be competitive within the highway construction such as myself.

The State as received over two million dollars over the last several years and has not used to funds for the DBE firms. After sitting in a hearing yesterday at the Office of Administrative Hearing here in North Carolina (17 OSP 06444). Hearing that the State of North Carolina does not support minority owned businesses is very concerning to me. The NCDOT receives grant monies, to say that the money is used to help MBE & WBE firms. But that is not the case here in North Carolina; there has been a mismanagement of public funds and abuse of power within the NCDOT and the office of historically underutilized business. This is a violation of the law to the small minority owned businesses, and also to the taxpayers of North Carolina.

I am contacting the Department of Civil Rights to request instructions regarding procedures to conduct a hearing and investigation of the NCDOT in the mismanagement of funds and the abuse of power.

Respectively,

Dineen Etienne
Owner of Dee's Construction

# EXHIBIT I – List of Minority firm complaints

**SUMMAY OF FIRMS EXPERIENCING BARRIERS WITH PARTICIPATION/SERVICES THROUGH THE BUSINESS DEVELOPMENT AND SUPPORTIVE SERVICES PROGRAM WITH NC INSTITUTE FOR MINORITY ECONOMIC DEVELOPMENT**

A. Firm determined additional trainings/workshops were not needed:

1. Diverse Construction - Division 5

B. Firms complaining regarding quality of services or consultant/sub-consultant lack of knowledge and abilities to provide assistance, training or technical support; and, firms HUB/NCDOT staff found to receive inadequate support:

1. Reliable, Inc. – Division 5 (Firm attended workshop sponsored by consultant and assisted trainer in areas of deficiency. Firm reported sub-consultant lacked knowledge of industry and also lacked knowledge of areas in which firm required support. Firm informed sub-consultant of firm's perception of sub-consultant's weaknesses. **Next Step:** HUB/NCDOT staff began outreach support with firm).

2. J2 Associates – Division 5 (Firm indicated a history and familiarity with NC IMED and work provided by NC IMED. Firm indicated NC IMED could not provide assistance in any areas to benefit the needs of firm. **Next Step:** Staff follow-up with firm intermittently).
   1135 Kildaire Farm Rd Cary NC 27511
   919 415-4245

3. AP Freight Line, Inc. – Division 5 (Firm contacted HUB/NCDOT staff seeking assistance with capital. Firm was attempting to secure a loan or line of credit. Staff guided firm to consultant. Firm called staff expressing concerns regarding lack of support. Staff requested inclusion of Alicia Lyons to sit in on call). **Next Step:** Firm continues in program with NC IMED and contacts HUB staff as needed).
   306 Big Willow Way, Rolesville NC 27571
   919-523-9090

4. Branch Paving – Division 5 (Firm did not find sub-consultant knowledgeable of industry. **Next Step:** Staff recently became aware that

firm relocated. Staff does not have contact information. Firm is no longer in the program).

5. Timely Transportation – Division 5 (Firm complained and withdrew from the program. Firm forwarded an e-mail to NC IMED and staff. Firm informed staff of concerns that consultant was only using firms as numbers but provided no quality services. **Next Step:** Staff supports firm as needed).

6. Meticulous Painting – Division 5 (Firm indicated lack of response to NC IMED was the result of health issues. Firm was guided to respond to NC IMED. **Next Step:** Staff is working with firm in addition to any support provided by NCIMED).

7. Creative Management Staffing Services – Division 5 (Firm indicates familiarity and history with NC IMED. Firm did not perceive NC IMED could be of benefit to firm's growth. **Next Step:** Staff supports firm as needed).

8. 1st Choice Solutions – Division 5 (Firm expressed concerns related to the knowledge, skills and ability of NC IMED sub-consultant. Firm attended workshop as requested and determined services would not be beneficial. Firm reports engaging a discussion with NC IMED sub-consultant and expressing disappointment and concerns regarding services. **Next Step:** Staff is supporting firm).

9. K. Smith and Company – Division 5 (Firm complained regarding the skills, knowledge and ability of sub-consultant). **Next Step:** Staff and NCIMED support firm).

10. KMT Heating and Air Conditioning – Division 5 (Firm expressed concerns regarding the inability of NC IMED to provide needed assistance in the areas of training, certification and support. Next Step: Staff support and NC IMED assistance was recommended.

11. Purpose Driven Seeding and Mulching Division 6 – Firm received financial support and services through NCDOT DBE Supportive Services Program. **Next Step:** Staff notified NCIMED of a duplication in services and requested that NCIMED withdraw firm.

12. Dee's Construction/Dee's Handywoman – Division 6 (Firm complained regarding assistance with development of financial documentation to support loan assistance and perception that program was just taking advantage of businesses. **Next Step:** Staff provided support).

13. J. K. Perkins – Division 6 (Firm had not been responsive. Staff followed up with firm requesting response to NC IMED).

14. McCain Striping Services – Division 7 (Firm was contacted by staff and staff discussed firm's needs. Firm indicated consultant did not request information related to specific needs, barriers to growth. Staff advised firm to discuss the comprehensive list of needs with consultant). **Next Step:** Firm is served by NC IMED).

15. Alamance Striping – Division 7 (Firm reports an inability to secure support from sub-consultant. Firm indicates sub-consultant conducted a site visit and called subsequently to secure reports on the number of bids submitted monthly. Firm indicates a consultant came to visit requesting firm's participation on a NCDOT project and informed firm of the ability to secure capital, however, lender would need to secure part of the value of the contract. Staff followed up with NC IMED to discuss possible conflicts as consultant worked with NC IMED and was also in a business relationship with sub-consultant assigned to firm. **Next Step:** Staff providing support to firm).

16. Stewart Hauling – Division 9 (Firm was guided to work with NC IMED. **Next Step:** Firm receives support from staff and has not been withdrawn

from NC IMED support). * HUB staff concerns regarding quality of services.

17. Construction Concepts and Design – Division 10 (Firm contacted staff with a complaint regarding the lack of knowledge, skills and ability of staff. Firm reported staff indicated construction was not an area in which knowledge existed. Firm reported that staff suspended interview to talk with her girlfriend approximately twenty minutes. Firm did not desire to continue receiving services from sub-consultant. Staff communicated with NC IMED and NC IMED project manager indicated she would provide direct services. Firm did not receive a follow-up from NC IMED. Staff discussed issue during monthly meeting. **Next Step:** Staff has been working with firm).

18. Abram Construction – Division 10 (Staff initiated contact with firm and firm discussed needs. Staff inquired about firm's needs. Staff and firm discussed a diverse list of gaps in firm's operations. Staff advised firm to discuss additional needs with consultant. Staff became aware of firm's noncompliance with NCDOT certification. Firm was delinquent on four years of tax returns and had been decertified. NCDOT re-certified firm although firm failed to meet NCDOT certification criteria. Staff conferred with NCDOT and communicated with consultant regarding additional areas of weakness impacting firm. Consultant indicated firm has a history of problems with taxes. Consultant later complained that staff was critical of NC IMED services. **Next Step:** NC IMED continues to provide services to firm). * HUB staff concerns regarding quality of services. * HUB staff concerns regarding quality of services.

19. Smith Jamison – Division 9 (Staff initiated contact with firm to encourage response to NC IMED. Firm indicated familiarity with NC IMED and stated they no longer desired services. Firm had previously contact HUB/NC DOT staff repeatedly to inquire about program support. **Next Step:** HUB staff provides support as needed. Firm is progressing).

20. WGK – Division 10 (Firm repeatedly received calls from firm requesting assistance. Staff informed firm to work with consultant. Firm indicated that workshops were not a priority. Firm stated a discussion was engaged with NC Institute sub-consultant and firm was reportedly informed that services provided were free to firm. Firm requested assistance with estimating and shared concerns related to financial management/taxes. Staff communicated with consultant during monthly meeting, sharing feedback from firm. NC IMED indicated a long history existed between NC IMED and firm. **Next Step:** Firm continues to be served by NC IMED. Staff is attempting to identify resource support to assist with financial management system. Firm must address NC DOT compliance requirements in order to secure services from NC DOT Supportive Services program). * HUB staff concerns regarding quality of services.

21. D. E. Walker Construction – Division 10 (Firm was encouraged to respond to NC IMED. Firm indicated NC IMED lacked capacity to provide support to D. E. Walker Construction. Staff encouraged firm to continue in the program and consider ways in which firm might be able to expand business and grow. **Next Step:** Firm continues to receive services from NC IMED). * HUB staff questions type of services provided.

22. Hunter & Hunter General Services, LLC – Division 12 (Firm contacted Alicia Lyons inquiring about needed assistance and delays in program response. Alicia contacted staff to add firm to service recipients, if possible. Staff added firm after Alicia's initial request. Staff followed up with firm and informed firm of enrollment and previous contact by NC IMED project manager. Firm informed staff of confusion related to US DOT Program services described by NC IMED project manager and lack of awareness of two different program. Staff discussed possible conflicts and existing barriers impacting firm. Staff informed NC IMED of specific barriers affecting a pending contract with firm and issues to be considered in assessing and supporting firm. Staff received follow-up requests from firm, however, firm is supported by NC IMED. **Next Step:** Firm is supported by NC IMED). * HUB staff concerns regarding quality of services.